**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0610n.06

No. 08-6019

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 26, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff - Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| AVERY VINSON POYNTER, | ) | |
| | ) | |
| **Defendant - Appellant.** | ) | |
| _____ | ) | |

**Before: KEITH, SUTTON, and WHITE, Circuit Judges.**

**WHITE, Circuit Judge.** Defendant Avery Poynter appeals his 360-month sentence, arguing that it is both procedurally and substantively unreasonable. We **AFFIRM** the district court's sentence.

**I. BACKGROUND**

In July 2007 this court issued an opinion in Poynter's first appeal that contained the relevant facts regarding Poynter's crime, criminal history, and initial sentence:

> On May 4, 1989, Avery Poynter pleaded guilty in Kentucky state court to committing four counts of sodomy in the second degree with an eleven-year-old male. The court sentenced Poynter to a 20-year term of imprisonment, but the State released him on parole four years later after he completed Kentucky's sex offender treatment program in prison.
>
> In October 2003, Poynter traveled from Kentucky to Tennessee to have sex with a fourteen-year-old male. In December, he met the same minor in Indiana and, after the two traveled to Kentucky, they again had a sexual encounter. In April 2004, Poynter traveled to Indiana with another fourteen-year-old male for another sexual foray. The next month, the two traveled to Florida for the same purpose.

After the police caught Poynter, he pleaded guilty to four counts of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor. 18 U.S.C. § 2423(b). Accounting for adjustments based on his supervisory control over the victims, U.S.S.G. § 2A3.2(b)(2)(B), and on his multiple counts of conviction, *id.* § 3D1.4, the district court set Poynter's initial offense level at 28 and his criminal history category at III, creating a guidelines range of 97-121 months. Because Poynter was convicted of a sex crime and had previously "sustain[ed] at least one sex offense conviction," the district court applied the mandatory minimums of the "Repeat and Dangerous Sex Offender Against Minors" sentencing guideline. U.S.S.G. § 4B1.5(a). The district court therefore increased Poynter's final offense level to 32 (including a two-level adjustment for acceptance of responsibility), *see id.* § 4B1.5(a)(1)(B)(ii), and increased his criminal history to category V, *see id.* § 4B1.5(a)(2). All of these adjustments considered, Poynter was left with a guidelines range of 188-235 months.

At the sentencing hearing on August 18, 2005, the district court heard testimony from Poynter's victims and from the mother of the second victim. The district court acknowledged receiving a letter from Poynter's parents, and Poynter spoke on his own behalf. Poynter "apologize[d] to [his] victims, as well as [his] family"; he recognized that "this has been a problem for [him] for many years" and that he had already gone "back into counseling with the counselors"; he welcomed "anything that [the] Federal [Government] has to offer"; and he said that he did not "intend" to "ever hav[e] another victim." JA 41-42.

In sentencing Poynter, the district court acknowledged the guidelines range of 188-235 months and the statutory maximum of 720 months. *See* 18 U.S.C. §§ 2423(b), 2426(a). The court recognized that it must "impose a sentence . . . that is sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553(a)(2). JA 46. It then analyzed the § 3553(a) factors in exercising its independent judgment about what an appropriate sentence would be.[1] Reflecting on the "seriousness of the offense," *see* § 3553(a)(2)(A), the court said that "[t]he protection of children in our society deserves the highest priority," JA 46, and observed that Poynter "used alcohol and other drugs to seduce these victims" and that he had "victimized multiple children," JA 49; *see* § 3553(a)(1). Reflecting on the need to impose a "just punishment" and "to promote respect for the law," *see* § 3553(a)(2)(A), the court focused on Poynter's criminal history: "You did do it once before . . . . You did not learn your lesson. And so I think that the just punishment component of this has been ratcheted upwards." JA 46; *see* § 3553(a)(1).

---

[1]When "determining the particular sentence to be imposed," a sentencing court "shall consider" a list of factors contained in 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a); *see Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596-97 (2007).

*United States v. Poynter*, 495 F.3d 349, 350-51 (6th Cir. 2007). Accounting for the need to protect the community, avoid recidivism, and impose a sentence that reflects the seriousness of the offense, the district court sentenced Poynter to the statutory maximum of 720 months (60 years). In doing so, it also noted that the sentence would "be served concurrently with the state sentence that has been imposed." (ROA, Tr. Vol. 1 at 18-19.)

Poynter appealed and this court reversed and remanded for resentencing. Applying the now-modified analysis from *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006), the court looked at the sentence's proportional deviation from the Guideline recommendation, noting that "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be." *Poynter*, 495 F.3d at 352 (quoting *Davis*, 458 F.3d 495 (internal quotation marks omitted)); *compare United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007), and *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008), with *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 594-95 (2007) (rejecting a "rigid mathematical formula" but permitting courts to "take the degree of variance into account and consider the extent of a deviation from the Guidelines.") Because the explanation for the variance provided by the district court – to prevent Poynter from ever abusing a child again – did "not distinguish Poynter from other repeat sex offenders," the district court's justification did not support its variance from a Guideline sentence.[2] *United States v. Poynter*, 495 F.3d 349, 353 (6th Cir. 2007). After listing numerous other cases in which courts upheld variances as great as 177% and vacated variances as low as 66%, this court

---

[2]This court also noted that the district court had applied a sentencing guideline that addressed recidivism by increasing the offense level for a sex offender who has committed a prior sexual offense. *See* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B1.5 ("Repeat and Dangerous Sex Offender Against Minors").

concluded the Poynter's "60-year sentence, a 206% upward variance from the top of the guidelines range, cannot be sustained." *Id.*

The district court held a second sentencing hearing on October 29, 2007. At that hearing, the court reexamined the Guidelines range and the relevant § 3553(a) factors. Considering subpart (2)(A) of § 3553 – the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – the court listed the factors that it considered in its effort to achieve "a just punishment and one that is sufficient but not greater than necessary." (ROA, Tr. Vol. 3 at 9.)[3] The court then compared the facts of Poynter's case with "garden variety" sexual abuse cases in order to determine whether Poynter's sentence should be "within the guideline range or above the guideline range." (*Id.* at 11.) According to the court, many of the "garden variety" cases involved grooming, traveling across state lines, or a vulnerable victim. Nevertheless, the court concluded that Poynter's conduct presented other factors that distinguished his crime and required an above-Guidelines sentence. Speaking directly to Poynter, the court explained:

> . . . first of all, that you were in a relationship of trust with the victims beyond mere grooming. You were in an employer-employee relationship. These were ostensible business trips, at least in one situation. That's one fact, the relationship of trust beyond mere grooming.

---

[3]The factors were: 1) a plea involving multiple counts of conviction; 2) a relationship of trust "above mere grooming" between defendant and his victims; 3) defendant's prior treatment, which did not hinder his offending again; 4) defendant's victimization of at-risk youth; 5) defendant's practice of exposing his victims to drugs and alcohol as part of his crimes; 6) defendant's practice of exposing his victims to pornography as part of his crimes; 7) defendant's use of force; 8) defendant's practice of taking his victims great distances when traveling with them to commit the crimes. (ROA, Tr. Vol. 3 at 9-10.)

> The second fact is that you did have prior treatment, but it didn't prevent you from doing this. And not in all these cases, the typical garden variety cases, do we see someone with prior treatment.
>
> Third, the – there were multiple counts, and that, I believe, takes it out of the garden variety case.
>
> Fourth, there was travel by the child. Now, the child might be lured to a local hotel. But here the interstate travel involved a child as well.
>
> Fifth, there was force involved.
>
> Sixth, there was pornography involved. We don't see that in every case. There may be grooming in other ways by luring them with promises to go to an amusement park and so forth. But here there was pornography involved, and that's not in the garden variety case.
>
> Seventh, then there were the use – there was the use of drugs and alcohol. Again, as I said, potentially addicting substances, and I've already spoken to that, and the pornography. Those factors – those factors that I've just listed take it above the guidelines in my estimation, and so I am going to depart upward above the guidelines.

(*Id.* at 13-14.) While the court found that the sentence need not "go to the upper reaches, toward the statutory maximum," it held that the facts demanded a 360-month (30-year) sentence. (*Id.* at 14.)

The court also revisited the interaction between Poynter's state and federal sentences, ordering that the new federal sentence run "consecutive to the state sentence."[4] (ROA, Tr. Vol. 3 at 15-20.) On December 7, 2007, Poynter filed a motion to modify the sentence, arguing that his federal sentence should run concurrently with his: 1) 1989 sodomy conviction in Fayette Circuit

---

[4]The district court appears to have been referring to the 1989 sentence alone when it issued this order. (*See* ROA, Pleadings at 172 ("The pre-sentence report used at the October 30 [sic], 2007, re-sentencing was not amended to reflect the disposition of the Madison Circuit Court charges and the Sentencing Guidelines calculation upon remand remained the same.").) It is not clear if the district court, at the time of the second sentencing, knew that Kentucky also brought charges against Poynter for offenses associated with the conduct underlying his federal conviction. *See infra.*

Court for which the state revoked his parole when it arrested him for the crimes currently before the court and 2) 2005 conviction in Madison Circuit Court for using a minor in a sexual performance. The state sentenced him for the latter offense – which was related to the conduct for which the United States prosecuted him in federal court – after the district court handed down Poynter's initial federal sentence. The Madison Circuit Court instructed that the sentence was to run consecutive to Poynter's 1989 Fayette Circuit Court sentence but concurrently with Poynter's federal sentence.

Before the court responded to Poynter's motion to modify, he filed a notice of appeal. As a result, the district court denied his motion to modify for lack of jurisdiction. *See United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984) ("It is well settled that the filing of the notice of appeal with the district court clerk deprives the district court of jurisdiction to act in matters involving the merits of the appeal."). Sometime thereafter, defendant and the government filed a joint motion for remand, the latter conceding that the federal sentence should run concurrently with the associated Madison Circuit Court sentence for use of a minor in a sexual performance. On May 1, 2008 the Sixth Circuit issued an order remanding the matter to the district court "for the limited purpose of considering the defendant's motion to modify the sentence." (ROA, Pleadings at 130.)

On remand for the second time, the district court modified Poynter's federal sentence to run consecutive to his 1989 Fayette Circuit Court sentence and concurrently with his 2007 Madison Circuit Court sentence. Defendant timely appealed.

## II. ANALYSIS

After *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and "appellate review of sentencing decisions is limited to determining whether they are

'reasonable.'" *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007); *see also United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). The review is two-tiered: the court must review for both procedural and substantive error. *Gall*, 128 S. Ct. at 597.

A court of appeals "must review all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard." *Gall*, 128 S. Ct. at 591; *see also Grossman*, 513 F.3d at 595; *United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002) ("A district court's decision to imposes a consecutive or concurrent sentence under § 5G1.3 of the Sentencing Guidelines is reviewed for abuse of discretion."). While this circuit applies "a rebuttable presumption of reasonableness" to a sentence that falls within the Guidelines, it does not attach a presumption of unreasonableness to a sentence outside the Guidelines. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Gall*, 128 S. Ct. at 597. When reviewing a sentence outside the Guideline range, the appellate court "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 128 S. Ct. at 597.

**A. Procedural Unreasonableness**

Poynter argues that his sentence is procedurally unreasonable because the district court failed to fully consider the impact of ordering his federal sentence to run consecutively to his 1989 Fayette Circuit Court sentence, undermining the court's conclusion that a 360-month sentence was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). He points out that when the district court imposed the sentence on remand, the Presentence Investigation Report was "amended to reflect the disposition of the 2005 state sentence, [but] it was not amended to reflect the time

served or the time likely to be served between release on those state charges." (Appellant's Br. at 16.) According to Poynter, "[t]he length of time to be served on the prior undischarged terms of imprisonment would be a critical factor in determining the ultimate length and sufficiency of his federal sentence." (*Id.*)

In order to meet the requirements of procedural reasonableness, "the sentencing judge must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551U.S. 338, —, 127 S. Ct. 2456, 2468 (2007)). On review an appellate court must,

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

*Gall*, 128 S. Ct. at 597; *see also United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).

Under 18 U.S.C. § 3584, "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." The code instructs a court making such a decision to "consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." *Id.* Section 3553(a) directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.* § 3553(a). Paragraph two, in turn, focuses on "the need for the sentence imposed – (A) to reflect the seriousness of the offense, promote respect for the law, and

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2).[5]

The Guidelines also provide instruction on consecutive versus concurrent sentencing. Under these facts, § 5G1.3(c) explains that a court may impose a sentence that runs "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 5G1.3(c) (policy statement). The commentary to § 5G1.3 includes specific factors the court should consider when applying subsection (c). *Id.* § 5G1.3 cmt. n.3 (2007). One of these factors is "[t]he time served on the undischarged sentence and the time likely to be served before release."[6] *Id.* §

_____

[5]Overall, 18 U.S.C. § 3553(a) instruct courts to consider seven factors when imposing a sentence. The others are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (3) "the kinds of sentences available"; (4) the Guideline sentence; (5) any pertinent policy statement issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense."

[6]The complete paragraph explains:

(A) In General.–Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:
(i) The factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
(ii) The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
(iii) The time served on the undischarged sentence and the time likely to be served before release;
(iv) The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different

5G1.3 cmt. n.3(A)(iii).   Another portion of the same application note, however, specifically

addresses situations in which the court is sentencing a defendant who "was on federal or state

probation, parole or supervised release at the time of the instant offense and has had such probation,

parole or supervised release revoked." *Id.* § 5G1.3 cmt. n.3(C).  When that occurs, "the Commission

recommends that the sentence for the instant offense be imposed consecutively to the sentence

imposed for the revocation."  *Id.*

Sixth Circuit precedent holds that "where a district court has considered the factors listed in

18 U.S.C. § 3553(a) and the applicable guidelines and policy statements in effect at the time of

sentencing, the district court's decision whether to impose a concurrent or consecutive sentence

pursuant to § 5G1.3 is discretionary."  *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006).

While this court has noted that "this is not unfettered discretion, and the record on appeal should

show that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its

determination," *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009), the district court is not

"*required* either to (1) use the commentary methodology or else (2) invoke a departure from the

Guidelines," *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997).  Even before *Booker* made

the Guidelines advisory, this court noted that the commentary's  methodology aimed "simply 'to

assist the court' in determining whether to impose a concurrent or consecutive sentence."  *Id.*

(quoting U.S.S.G. § 5G1.3 cmt. n.3 (1994)).

---

> federal court; and
> (v) Any other circumstance relevant to the determination of an appropriate sentence
> for the instant offense.

U.S.S.G. § 5G1.3 cmt. n.3 (2007).

In this case, the district court made the ultimate decision to impose a consecutive sentence after the second remand. In declining to order that the federal sentence run concurrently with Poynter's undischarged 1989 Fayette Circuit Court sentence, the district court cited § 5G1.3(c) and listed all the aforementioned factors. *See supra* note 6; *see also Watford*, 468 F.3d at 916-17 ("From the record, it is clear that the District Court considered the recommendations of the Guidelines and the pertinent policy statement."). It also noted the important role of the § 3553(a) factors and pointed out that it had addressed the § 3553(a) factors when formulating the 360-month sentence at the earlier hearing. While the court admitted that it "did not specifically address each of the § 3553(a) factors again when determining whether to impose a concurrent versus consecutive sentence, the complete sentence was imposed after consideration of all those factors." (ROA, Pleadings at 175 (Dist. Ct. Order).) *See United States v. Campbell*, 309 F.3d 928, 931 (6th Cir. 2002) (noting that the court "is not required to make specific findings related to each factor considered"); *United States v. Underwood*, 11 F. App'x 581, 588 (6th Cir. 2001) (unpublished disposition) (concluding that the district court's explanation of the sentence "alone reflects that [it] paid due consideration to the statutory factors"). Finally, the court referred to application note 3(C)'s recommendation that any sentence for the instant offense run consecutively with a sentence imposed as part of a parole revocation proceeding. U.S.S.G. § 5G1.3 cmt. n.3(C); *see Campbell*, 309 F.3d at 931 (pointing out that the court's consecutive sentence was consistent with § 5G1.3's commentary regarding revocations of supervised release). Reiterating a statement from the second sentencing hearing, the court explained that the state court sentence was "the punitive part of [defendant's] reoffending under a state court judgment." (ROA, Pleadings at 176 (alteration in original); *see also* ROA, Tr.

Vol. 3, at 20 ("I am imposing a consecutive sentence . . . based on the notion that what he is serving in state court is serving out the punitive part of his reoffending under a state court judgment, and this addresses a separate wrong . . . .").)

Despite the court's failure to specifically address "[t]he time served or the time likely to be served" on Poynter's state convictions, the district court knew, with regard to the Fayette Circuit Court conviction, that Poynter was arrested on March 2, 1989; sentenced to a 20-year term on June 2, 1989; paroled on October 7, 1993; and had his parole revoked on December 17, 2004. Likewise, for the Madison Circuit Court conviction, the district court knew Poynter was arrested on September 1, 2004 and sentenced to a 10-year term on or around December 13, 2005.

The district court also considered the relationship between Poynter's 1989 conviction and subsequent offense, noting that its assessment of the § 3553(a) factors during sentencing "did not involve the separate harm stemming from the Fayette Circuit Court conviction, as that case involved facts and victims wholly separate from the instant federal offenses." (ROA, Pleadings at 175.) *See United States v. Cordell*, 87 F. App'x 475, 477 (listing, among the reasons for making defendant's "federal sentence run consecutively to his state imprisonment," that "the offenses were 'wholly unrelated' to one another"). Because the court only considered the facts, victims, and harms underlying Poynter's 2004 offense when it concluded that his 360-month sentence was "sufficient, but not greater than necessary" to meet the requirements of § 3553(a)(2), Poynter's 1989 sentence did not impact the court's § 3553(a) analysis. Further, the record makes clear that the court properly turned its attention to § 5G1.3(c) and the relevant commentary before imposing the consecutive sentence. *Covert*, 117 F.3d at 946.

Therefore, we conclude that the district court did not abuse its discretion in ruling that the federal sentence should run consecutively to the state sentence for Poynter's 1989 conviction.

## B. Substantive Unreasonableness

Poynter argues that his sentence is substantively unreasonable because the district court's reasons for the imposition of a non-Guidelines sentence do not differentiate Poynter from other repeat sex offenders. This claim implicates 18 U.S.C. § 3553(a)(6) which calls on sentencing courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

An appellate court may find a sentence "to be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives and unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (internal quotation marks omitted). Although "*Gall* bars a 'rigid mathematical formula' for reviewing outside-guidelines sentences, it permits district and appellate courts to require some correlation between the extent of a variance and the justification for it." *Grossman*, 513 F.3d at 596. A reviewing court, however, must give "'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Bolds*, 511 F.3d at 581.

In this case, the Guidelines recommended the court sentence Poynter to 188 to 235 months' imprisonment. The Presentence Investigation Report did not identify any factors – mitigating or aggravating – that would justify a departure from the Guidelines. In the sentencing memorandum it submitted to the district court, the government recommended a 235-month sentence. The district

court, however, cited several factors specific to Poynter's case and sentenced him to 360 months' imprisonment.

In its opinion remanding the district court's first sentence, the Sixth Circuit noted that "other aspects of Poynter's crimes mentioned by the district court – his multiple counts of conviction, his relationship of trust with the victims, the fact that prior treatment did not prevent these crimes – may well justify an upward variance (even a significant upward variance) . . . ." *Poynter*, 495 F.3d at 354. The district court did not rely on these "other aspects" when it imposed the 720-month sentence, but it relied on similar factors when it imposed the 360-month sentence.

The transcript reveals that the district court considered the Guidelines range and thoroughly reviewed § 3553(a) factors, listing the "factual factors" that it considered under § 3553(a)(1) (ROA, Tr. Vol. 3 at 9); 18 U.S.C. § 3553(a)(1) (instructing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (noting no "requirement that a district court make specific findings relating to each of the factors considered"); *see also supra* note 3. It then reexamined those factors in light of "garden variety" cases to decide whether the "factors . . . enumerated put [Poynter] within the guideline range or above the guideline range." (ROA, Tr. Vol. 3 at 11.) *See supra* note 3 and accompanying text. Those factors that distinguished Poynter's case, persuaded the court to "depart upward above the guidelines."[7] (*Id.* at 14.)

---

[7]Though the district court identified its action as a "depart[ure] upward," the court's analysis is along the lines of a variance. As this court explained in *United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009):

"'Departure' is a term of art under the Guidelines and is distinct from 'variance.'" *Blackie*, 548 F.3d at 403 (quoting *Irizarry v. United States*, — U.S. —, 128 S.Ct.

No. 08-6019
*United States v. Poynter*

Poynter argues that a variance is inappropriate in this case because the district court's

increase in Poynter's offense level under § 4B1.5 ("Repeat and Dangerous Sex Offender Against

Minors") already accounted for recidivism by "ensur[ing] lengthy incarceration for offenders who

engage in a pattern of activity involving the sexual abuse or exploitation of minors." U.S.S.G. §

2198, 2202, 171 L.Ed.2d 28 (2008)). A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. U.S.S.G. § 1B1.1(E). Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. *United States v. Smith*, 474 F.3d 888, 896 n. 3 (6th Cir.2007) (Gibbons, J., concurring). A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). *Id.* While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

In contrast with *Grams* and other cases, the district court's explanation in this case indicates that it aimed to apply a variance. *See id.*; *compare United States v. Jordan*, 544 F.3d 656, 671 n.12 (6th Cir. 2008) (concluding that "[t]he district court in this case imposed a variance because it based its sentence on the § 3553(a) factors and did not refer to any of the Chapter 5 bases for departure"), *with United States v. Stephens*, 549 F.3d 459, 466-67 (6th Cir. 2008) ("[B]oth defense counsel and the district court referred only to *departures*, which leaves us in doubt as to whether the court fully considered its discretion to vary from the sentencing Guidelines range."); *see also United States v. Wise*, 278 F. App'x 552, 566 n. 3 (6th Cir. 2008) ("While it would be helpful on appellate review if the district court would articulate whether it was departing or varying, it is of no consequence in this case because we review both actions for reasonableness.").

Defendant also argues that the district court "made no finding as contemplated in 18 U.S.C. § 3553(b)(2)[(A)(i)][]." This section prevents a court from applying a longer sentence than recommended by the Guidelines to perpetrators of sexual offenses against children unless it "finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described." *Id.* Defendant's argument is without merit because, in *United States v. Shepherd*, 453 F.3d 702, 704 (6th Cir. 2006), the Sixth Circuit concluded "that the rationale of *Booker* applies equally to sentences imposed pursuant to 18 U.S.C. § 3553(b)(1) or 18 U.S.C. § 3553(b)(2)" and held that § 3553(b)(2) is no longer valid.

4B1.5 cmt. background. The district court, however, did not base its variance on Poynter's recidivism. Rather, it was concerned with the aforementioned aspects of the instant offense – e.g. Poynter's role as an employer of the victims, his prior treatment, his traveling with the victim children – which are not common to all repeat sex offenders. As in other cases in which this court has affirmed a non-Guidelines sentence, the district court "ultimately rested [its] decision on a number of individualized considerations." *Grossman*, 513 F.3d at 598.

A review of the record does not show that "the incarceration imposed was an unreasonable sentence, regardless of whether it is the sentence" this court might have applied. *United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007). While the departure is not an insignificant one, "the district court not only explained the reasons it was departing upward but it also provided an analysis of the § 3553(a) factors." *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007).

Defendant has correctly observed that the district court did not comply with 18 U.S.C. § 3553(c)(2)'s requirement that the specific reasons for a sentence outside the Guideline range "be stated with specificity in the *written* order of judgment and commitment." 18 U.S.C. § 3553(c)(2) (emphasis added). We do not regard the court's failure to comply with this aspect of § 3553(c) as a basis for resentencing because the court provided a detailed oral explanation of its reasons for sentencing outside the Guidelines.[8] Defendant has asked for no relief other than resentencing.

---

[8]While this court has emphasized the importance of § 3553(c)(2), it has not vacated a sentence *solely* for failure to meet the statute's written order requirement. *See United States v. Grams*, 566 F.3d 683, 685-86 (6th Cir. 2009) (remanding because, *inter alia*, the court failed to comply with 18 U.S.C. § 3553(c)'s requirements); *United States v. Blackie*, 548 F.3d 395, 401-02 (6th Cir. 2008) ("Given the *clarity* of § 3553(c)(2), the district court *plainly* erred when it did not refer to the applicable Guidelines range and failed to provide its specific reasons for an upward departure or variance at the time of sentencing or in the written judgment and commitment order."); *United States v. Fuson*, 116 F. App'x 588, 590 (6th Cir. 2004) (remanding when the district court

No. 08-6019
*United States v. Poynter*

Thus, we conclude that the district court did not abuse its discretion when it imposed a non-Guidelines sentence of 360-months' imprisonment.

### III.  CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's sentence.

---

"gave most of its reasons for the departure through an oral statement in court and ultimately issued a two-sentence written order," to allow the district court "to explain in writing the basis for the departure," but also noting "an independent (non-technical) reason for remanding the case").